*CLOSED*

**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| HAIR ZONE INC. D/B/A SENSATIONNEL, | : | |
| | : | **Civil Action No. 25-14960 (SRC)** |
| Plaintiff, | | |
| | : | |
| v. | | **OPINION** |
| | : | |
| HARTFORD FIRE INSURANCE COMPANY; HARTFORD CASUALTY INSURANCE COMPANY; THE CHARTER OAK FIRE INSURANCE COMPANY; and TRAVELERS PROPERTY CASUALTY COMPANY OF AMERICA, | : | |
| | : | |
| Defendants. | | |

**CHESLER**, District Judge

This matter comes before the Court on various motions brought by the parties in this case. First, Defendants Travelers Property Casualty Company of America and The Charter Oak Fire Insurance Company ("Travelers") filed a motion to dismiss Plaintiff Hair Zone Inc. D/B/A Sensationnel's ("Plaintiff" or "Hair Zone") Complaint (Dkt. No. 28, the "Travelers Motion") pursuant to Federal Rule of Civil Procedure 12(b)(6). Second, Defendants Hartford Fire Insurance Company and Hartford Casualty Insurance Company ("Hartford"), after filing an Answer to the Complaint, (Dkt. No. 25), filed a motion for judgment on the pleadings, pursuant to Federal Rule of Civil Procedure 12(c). (Dkt. No. 41, the "Hartford Motion"). Third, in addition to opposing the defendants' motions, Plaintiff filed a cross-motion for judgment on the pleadings. (Dkt. No. 54, "Plaintiff's Motion"). All motions have been opposed and fully briefed. (Dkt. Nos. 54-56,

62).    For the following reasons, the Travelers Motion is **GRANTED**, the Hartford Motion is **GRANTED** and Plaintiff's Motion is **DENIED**.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a corporation that sells synthetic braiding hair, weaves, hair extensions, and wigs ("Hair Products").  (See Dkt. No. 1, the "Complaint," ¶ 4).  In exchange for Plaintiff's payment of monthly premiums, Travelers and Hartford have both promised, at various relevant times, to provide insurance coverage for Plaintiff consistent with the terms of their insurance agreements.  (See Id. ¶¶ 2-3, 20, 32) (the "Travelers Policies" and the "Hartford Policies").

Under the Travelers Policies, Travelers promises to pay "those sums that [Plaintiff] becomes legally obligated to pay *as damage because of 'bodily injury' or 'property damage.'*" (Id. ¶ 24).  Additionally, Travelers has a "duty to defend [Plaintiff] against any 'suit'" seeking those damages.  (Id. ¶ 26).  The term bodily injury is defined by the Travelers Policies as "[p]hysical harm including sickness or disease sustained by a person" or "[m]ental anguish, injury or illness, or emotional distress, resulting at any time from such physical harm, sickness or disease."  (Id. ¶ 28).  The term "property damage" means "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property that is not physically injured."    (Id. ¶ 27).    Additionally, the Travelers Policies exclude coverage for "[p]roperty damage to 'your product' arising out of it or any part of it."  (Travelers Motion, Ex. 1 at 118, "Your Product Exclusion").  "Your product" is defined as "[a]ny goods or products, other than real property, manufactured, sold, handled, distributed or disposed of by [Plaintiff]."  (Id. at 134).[1]

---

[1] The Court takes judicial notice of the insurance agreements between Plaintiff and Travelers even though they are attached to Travelers's Motion and not to Plaintiff's complaint because they are integral to the complaint as this case is fundamentally a dispute about coverage under the agreements.  Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d

The Hartford Policies likewise cover sums Plaintiff becomes obligated to pay as damages because of "bodily injury" or "property damage" and has a right and duty to defend against suits seeking such damages.  (Complaint ¶¶ 36-38).  The Hartford Policies define "bodily injury" as "physical: a. Injury; b. Sickness; or c. Disease sustained by a person and, if arising out of the above, mental anguish or death at any time."  (Id. ¶ 40).  The policies define "property damage" as "a. Physical injury to tangible property, including all resulting loss of use of that property."; or "b. Loss of use of tangible property that is not physically injured."  (Id. ¶ 41).  The Hartford Policies also maintain the same Your Product Exclusion as the Travelers Policies.  (Hartford Motion, Ex. 1 at 88, 104).

In March 2025, a class action complaint was filed against Plaintiff by Unique Little in the Superior Court of California.  (Complaint Ex. A, the "Little Complaint").  In May 2025, Plaintiff received a letter from counsel on behalf of a woman named Jamaica Love threatening to file a separate class action lawsuit.  (Complaint Ex. B, the "Love Letter").  The Little Complaint alleges that Plaintiff engaged in "fraudulent, deceptive and/or unsafe business practices" in connection with its sale of Hair Products containing dangerously high levels of various carcinogens, lead, and volatile organic compounds."  (Little Complaint ¶ 1).  The Little Complaint alleges generally that the Hair Products sold by Plaintiff contained toxins that, in some cases, are unsafe for human exposure in any amount.  (See, e.g., Id. ¶ 39).  The Little Complaint further alleges that Plaintiff failed to disclose this information to consumers before selling its Hair Products.  (See, e.g., Id. ¶ 9) ("Defendant is therefore liable to Plaintiff and Class Members for selling, manufacturing, or distributing the Hair Products without disclosing that the products contain the chemicals described

---

Cir. 1993) (holding that "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.").  For the same reason, the Court takes judicial notice of the Hartford Policies in considering the competing motions for judgment on the pleadings.

herein.").    The Little Complaint brings seven claims against Plaintiff: (1) Breach of Implied Warranty of Merchantability under a California state statute, (2) Violation of the California Consumer Legal Remedies Act, (3) Violation of California Unfair Competition Law, (4) Violation of California False Advertising Law, (5) Fraud, (6) Unjust Enrichment/Quasi-Contract, and (7) Negligent Misrepresentation.    (Id. ¶¶ 32-46).    Each of these claims fundamentally seeks relief predicated on harm caused to the class of individuals who purchased Plaintiff's Hair Products without knowing about their allegedly dangerous ingredients.    As alleged, if the purchasers had known the truth about the Hair Products they would have either not purchased the Hair Products or paid substantially less for them. The Love Letter essentially re-iterates the arguments already brought in the Little Complaint.[2]

Plaintiff notified Hartford and Travelers of these actions.    Hartford responded by sending Plaintiff letters on May 28, 2025 and July 3, 2025 disclaiming coverage of both the Little Complaint and the Love Letter under the Hartford Policies and it has not provided insurance coverage related to these actions. (See Complaint ¶ 6).    Travelers had not responded to Plaintiff's notice of the underlying actions by the time Plaintiff had filed its complaint in this case.    (See Id. ¶ 8).    Plaintiff filed this suit on August 27, 2025 seeking declaratory judgment declaring that Travelers and Hartford are obligated to defend and indemnify it in the underlying actions, and seeking damages from Hartford because of its failure to defend and indemnify Plaintiff.

---

[2] Further, because Plaintiff appears to concede, and this Court agrees, that the Love Letter has not yet ripened into a "suit" within the meaning of the Travelers or Hartford Policies, the insurers' duty to defend against the Love Letter is, as a threshold matter, not triggered. (Plaintiff's Mot. at 5, n. 2).  Accordingly, the Court focuses its opinion here on the Little Complaint and largely disregards the Love Letter.

## II.     DISCUSSION

### A. *Legal Standard*

To withstand a motion to dismiss for failure to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must contain "sufficient factual allegations, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).  A district court ruling on a motion to dismiss may "consider only the complaint, exhibits attached to the complaint, matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010).  A motion for judgment on the pleadings "is analyzed under the same standards that apply to a Rule 12(b)(6) motion." Revell v. Port Auth. of New York, New Jersey, 598 F.3d 128, 134 (3d Cir. 2010); see also Glob. Naps, Inc. v. Bell Atl.-New Jersey, Inc., 287 F. Supp. 2d 532, 539 (D.N.J. 2003) ("The difference between Rules 12(b)(6) and 12(c) is purely procedural as 12(c) requests for dismissal are governed by the same standards as 12(b)(6) motions.").

### B. *Analysis*

Though there are multiple competing motions in this case, there is a single core question: Does the Little Complaint fall within the coverage promised to Plaintiff by Travelers and Hartford? Specifically, the Court must determine whether the Little Complaint qualifies as a suit seeking damages "because of 'bodily injury' or 'property damage'" as contemplated by the Hartford and Travelers Policies.  If the answer is yes, and no exclusion applies, then the defendants have a duty

to defend Plaintiff against the Little Complaint. If the answer is no, then the defendants do not have such a duty and the complaint will be dismissed.[3] Because, the Court finds that the Little Complaint does not state claims seeking "damage because of 'bodily injury' or 'property damage,'" the Little Complaint does not fall within the coverage promised to Plaintiff, and the Plaintiff's Complaint will be dismissed.

The duty to defend requires an insurer to provide "the insured with a defense against all actions covered by the insurance policy." Abouzaid v. Mansard Gardens Assoc., LLC, 23 A.3d 338, 346 (N.J. 2011). This duty arises when an underlying complaint "states a claim constituting a risk insured against" by the relevant policies. Voorhees v. Preferred Mut. Ins. Co., 607 A.2d 1255, 1259 (N.J. 1992) (citation omitted). "If the pleadings set forth facts which bring the injury within the coverage of the policy, the insurer is then obligated to defend . . . ." SL Industries v. American Motorists, 591 A.2d 677, 680 (App.Div.1991) (citation omitted). In determining whether the duty to defend has been triggered, "court[s] typically look[] to the allegations of the complaint to decide whether the third party's action against the insured states a claim covered by the policy. So long as one count or claim is covered under the policy, the duty to defend is triggered. Am. Legacy Found., RP v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA, 623 F.3d 135, 139 (3d Cir. 2010) (quotation omitted). So, the Court must look to the Little Complaint and determine whether it "states a claim covered by" the Travelers or Hartford Policies, because if even "one count or claim is covered under the policy, the duty to defend is triggered." Id.

First, Plaintiff argues it is entitled to defense because the Little Complaint asserts damages "because of 'bodily injury.'" The thrust of Plaintiff's argument is that because the Little Complaint

_____

[3] Plaintiff states in its papers, "the duty to indemnify is premature at this stage." (Plaintiff's Mot. at 10 n. 6). The Court agrees and the focus of this opinion is exclusively whether the Little Complaint triggers the duty to defend.

outlines the extensive dangers of and possible harm from exposure to the various toxic chemicals alleged to be in Plaintiff's Hair Products, it falls within the "bodily injury" protection of the relevant policies. (See Hair Zone Mot. at 12-15). For support, Plaintiff primarily relies on the decision of another court in this district which found that under New Jersey law, "exposure to harmful substances, even when that exposure is not immediately accompanied by physical symptoms, can be 'bodily injury' under a CGL policy." Baughman v. U.S. Liab. Ins. Co., 662 F. Supp. 2d 386, 395 (D.N.J. 2009). The core issue with Plaintiff's argument is that even if this Court agrees that mere exposure to harmful substances without the immediate manifestation of symptoms may constitute "bodily injury," that conclusion is not, despite Plaintiff's argument, dispositive of this case. Understanding how the case at bar is distinguishable from Baughman is key to understanding why Plaintiff is not entitled to defense here.

In Baughman, the court found that the insured was entitled to defense from its insurer based on a series of complaints stemming from the presence of mercury in the insured's daycare facility. The underlying plaintiffs in Baughman brought claims alleging, among other things, strict liability, nuisance, and battery, because of exposure to toxins in the insured's daycare facility. Id. at 390. Additionally, the underlying plaintiffs in that case sought, as part of their damages request, medical monitoring which they required after having been exposed to the toxins at issue. Id. at 393. First the Baughman court determined that medical monitoring constituted "damages" even though in traditional tort law, medical monitoring might be classified as "equitable relief." Id. at 395. Then, the court found that the plaintiffs' exposure to mercury, which resulted in an increased risk of illness for the plaintiffs constituted "bodily injury" within the meaning of the parties' insurance agreements. Id. Finally, having classified relief sought for medical monitoring as "damages" and exposure to and increased risk of illness from mercury as "bodily injury," the court held that "[t]he

-7-

underlying plaintiffs have brought suit to procure, among other things, the costs of medical monitoring 'as damages' for the 'bodily injury' they allegedly suffered due to exposure to dangerous levels of mercury and so the underlying suits fall within the general coverage of the CGL policy." Id. at 396.

The facts here are crucially distinct from those in the Baughman case. The Little Complaint brings claims which allege injury based *only* on fraud, consumer fraud, breach of the implied warranty of merchantability and other similar actions. At no point does it seek relief based on harm caused by exposure to the alleged toxins in the Hair Products. Instead, the Little Complaint seeks relief based on the fact that if the named plaintiff and similarly situated class members had known about the potentially dangerous substances in the Hair Products, they would not have purchased the Hair Products or they would have been willing to spend less money on them. For example, in the first cause of action for breach of the implied warranty of merchantability, the Little Complaint states "as a direct and proximate cause of [Hair Zone's] breach . . . Plaintiff and Class Members have been injured and harmed because they would not have purchased the Hair Products (or at minimum would have paid much less) if they knew the truth . . .." (Little Complaint ¶ 109). The other six causes of action sound in the same basic injury to the class members.

In other words, even taking a broad view of the allegations of the Little Complaint, at no point will the named plaintiff or any class members need to show they in fact used the Hair Products or were exposed to any dangerous chemicals in order to recover.[4] A class member who

---

[4] The fact that a single paragraph of the complaint in its introductory section states that "claimants purchased and used the Hair Products and were therefore exposed to, or risked being exposed to, the harmful presence of chemicals linked to cancers and other life-threatening diseases," (Little Complaint ¶ 7), does not change the Court's analysis here. This paragraph in fact dovetails with the Court's view that a class member who only *risked* being exposed to the chemicals, but was not *actually* exposed to the toxic chemicals is every bit as included in this lawsuit as someone who inhaled the chemicals on a regular basis. This buttresses the position that the Little Complaint does not state a claim for damages based on "bodily injury."

purchased the Hair Products but never so much as opened a single bottle is identically situated to a class member who used the Hair Products on a daily basis.[5]  This is in stark contrast to Baughman, where the underlying plaintiffs brought tort actions such as battery and sought relief based on the medical monitoring they required from exposure to toxic chemicals.  Further, it appears Baughman is essentially the edge case in New Jersey with respect to interpreting the coverage requirements of a bodily injury provision, and Plaintiff cites no New Jersey case where an insurer has been held liable for coverage on facts analogous to those in this case.

Second, Plaintiff argues for coverage because the Little Complaint seeks damages "because of 'property damage.'"  Once again, Plaintiff's reliance on another decision from another court in this district, Am. All. Ins. Co. v. Jencraft Corp., 21 F. Supp. 2d 485 (D.N.J. 1998), helps illustrate why, in fact, Plaintiff is not entitled to coverage in this instant case.  In Jencraft, an insured manufacturer of window blinds sued its insurer for defense and indemnification.  The insured did so after having been sued by a number of plaintiffs in actions relating to the deterioration of its lead-stabilized vinyl mini-blinds and the resulting release of hazardous lead dust into the surrounding environment.  Jencraft, 21 F. Supp. 2d at 486.  Like here, the underlying lawsuits in Jencraft, "sounded in fraud, negligence, and breach of warranty."  Id.  But the court in that case was able to, after reviewing the complaints, "infer the specter of a property damage claim."  Id. at 487.  While the underlying causes of action in that case were similarly focused on economic harm, the complaints in Jencraft also alleged product defects which caused actual damage to the

---

[5] The Court notes that it states no opinion or judgment as to the merits of the Little Complaint and, further, that its underlying merits are irrelevant to the analysis here. See  Navigators Specialty Ins. Co. v. inVentiv Health Clinical, Inc., 826 F. App'x 199, 202 (3d Cir. 2020) ("The duty to defend is determined by comparing the allegations in the complaint with the language of the policy ... [and it] arises, irrespective of the claim's actual merit.") (quotation omitted).  The analysis of the Little Complaint here is strictly focused on whether it, as currently constituted, comes within the coverage promised by Travelers and Hartford to Plaintiff.

underlying plaintiffs' property.   For example, the Jencraft court, summarizing some of the underlying complaints, noted,

> The complaint in *Finley v. Wall–Mart Stores, Inc.,* expressly states with regard to damages that "lead dust has spread into Plaintiffs' homes and must be cleaned according to certain procedures in order to eliminate the hazard." . . . And the complaint in *Benefield v. Wall–Mart Stores Inc.,* alleges that "[i]n order to remove all lead contamination from their respective households, each plaintiff will have to use special vacuuming equipment, at a cost of $2,000 per household." . . . *That these homes will require special cleanup procedures to abate the alleged health hazards indicates "physical injury" to property that could trigger coverage under the policies.*

Jencraft, 21 F.Supp. 2d at 487 (emphasis added).  In other words, the Jencraft court hinged its finding of coverage under the "property damage" provision on the fact that the underlying complaints alleged that the plaintiffs' homes were physically injured and would require expensive and specialized clean-up services to make the homes habitable.

Plaintiff contends that the Little Complaint makes similar allegations and therefore it would be reasonable for this Court to "infer the specter of a property damage claim." Id. (Mot. at 16-18).  But reviewing the factual allegations of the Little Complaint to which Plaintiff draws this Court's attention in fact illustrates how far from the threat of a "property damage" claim the Little Complaint actually is.  Plaintiff cites to paragraphs 38 and 46 of the Little Complaint which state, respectively, ". . . practical ways of exposure: . . braids can . . break and accidentally be consumed with food, hand-to-mouth contact such as touching the braiding hair with your hands . . " and "when synthetic hair 'is heated, VOCs are released into the air.'" (Plaintiff's Mot. at 17) (Little Complaint ¶¶ 38, 46).  Neither of these allegations come close to the kind of specific allegations of physical injury to property found in Jencraft.  There is no allegation that the named plaintiff's or class members' property have been harmed nor that they will need to remediate such harm at

-10-

their own expense.  Accordingly, the Little Complaint does not seek damages because of "property damage."  Instead, Plaintiff can only point to nebulous allegations regarding the dangerous nature of the Hair Products at issue.

In short, Plaintiff asks this Court to take a wholly speculative view of the Little Complaint and imagine that, one day, it may morph into a complaint that asserts "bodily injury" or "property damage" such that Hartford and Travelers should be made to defend Plaintiff now.  This Court refuses to do so.  It may be the case that the Little Complaint has been carefully crafted to assert damages and injury based only upon the purchase of a defective product which class members would not have bought or paid as much for if they had known of the defect.  And this may have been an intentional decision to avoid class certification issues that could arise from a claim for personal injury or property damage.  But plaintiffs in an action have the right to determine how to pursue their claim, and defendants in that action may not recharacterize it in their own image to manufacture insurance coverage.  Plaintiff has attempted to do exactly that.

## III.    CONCLUSION

For the foregoing reasons Plaintiff's complaint against Hartford and Travelers will be dismissed in its entirety because it does not state a claim upon which relief can be granted.  Further, it is apparent based on the nature of the underlying class action that any effort to amend Plaintiff's Complaint would be futile, so the Complaint will be dismissed with prejudice.

s/Stanley R. Chesler
STANLEY R. CHESLER, U.S.D.J.

Dated: February 25th, 2026